[S. F. No. 7780. In Bank.—October 3, 1918.]

MADERA SUGAR PINE COMPANY (a Corporation), Appellant, v. NORMAN B. LIVERMORE & COMPANY (a Corporation), et al., Respondents.

SALE OF LOCOMOTIVE—WRITTEN SPECIFICATIONS—ACTION FOR BREACH OF WARRANTY—EVIDENCE—ORAL WARRANTY.—In an action for a breach of an oral warranty on the sale of a locomotive, which warranty was that the engine would be of sufficient power to haul at one time over the railroad track of plaintiff fifteen of plaintiff's cars loaded in the manner customary by plaintiff, which the engine failed to do, only hauling ten, evidence of such oral warranty made at the time the locomotive was ordered as to its tractive power is inadmissible where the specifications and order for the engine and the letters accepting the same were in writing, and the engine, if built according to such specifications, could not have had the power claimed by the oral warranty.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank J. Murasky, Judge. Affirmed.

The facts are stated in the opinion of the court.

Chickering & Gregory, for Appellant.

Arthur H. Redington and Thomas H. Breeze, for Respondents.

WILBUR, J.—This is an appeal by plaintiff from a judgment in an action brought by it for a breach of warranty on the sale of a locomotive. The alleged warranty was "that the engine would be of sufficient power to haul at one time over the railroad track of plaintiff fifteen of plaintiff's cars, loaded in the manner customary by plaintiff." This it failed to do, only hauling ten. The question involved is whether or not evidence of an oral warranty was admissible, in view of the fact that the specifications and order for the locomotive and the letters accepting the same were in writing. It is claimed that the oral warranty was made at the time the locomotive was ordered, and that it was not the intention of the parties to reduce the entire contract to writing, and that, therefore, although a portion of the contract was oral, the latter could be proved by parol evidence. The parties did, however, subsequently reduce the specifications of the engine to writing. If the oral warranty was in direct conflict with these written specifications evidence thereof could not be received. (*Germain Fruit Co.* v. *Armsby,* 153 Cal. 585, [96 Pac. 319].) The specifications for the "three truck sixty ton Shay" locomotive cover fourteen pages of the printed transcript, and, among other things, specify the weight of the engine in average working order, one hundred and twenty thousand pounds, and empty, approximately, one hundred thousand pounds, number of cylinders, their diameter, cylinder stroke, gear, size of boiler, steam pressure, grate area, and the tractive power, viz., 25,830 pounds. Experts testified that the term "tractive power," as used in the specifications, means the actual draw-bar pull which the engine exerts on the cars after all the friction of the engine has been overcome. That "a tractive power of 25,830 pounds" means the tractive power or pulling power on the level, and that the specifications of this engine would have to be changed in order to give it greater tractive power than 25,830 pounds. That the "theoretical" tractive power of the engine, as derived from the specifications, without allowance for friction, etc., would be thirty-four thousand pounds, and that certain deductions

were made therefrom under recognized engineering rules, for friction, etc., which reduced the actual computed tractive power to 25,830 pounds. In other words, an expert from the written specifications (without any specific statement of the tractive power) would, by computation from recognized formulae, ascertain that a locomotive built in accordance therewith would have a tractive power of 25,830 pounds. But these specifications, in addition to such details, stated the tractive power to be 25,830 pounds. It is conceded that this engine had a tractive power on the level equal to 25,830 pounds, as specified. It is, of course, obvious that the tractive power will decrease as the grade increases, for the reason that the engine must lift its own weight, which was also specified. The situation, then, is that the plaintiff got an engine with the pulling power called for by the written contract, but contends that there was an oral agreement that it would pull more than was stipulated in the writing, although in fact it could not pull more, if built according to written specifications. Under these circumstances the writing must control.

It is claimed by the appellant that there was sufficient reference in some of the writings to the oral negotiations or stipulations to permit evidence thereof. There is not the remotest reference to any warranty or stipulation concerning the tractive power of the engine. Without quoting from the letters, the most that can be said of them is that they recognize the fact that there had been negotiations between the parties. They do not attempt in any way to incorporate such oral negotiations into the letters or into the specifications. In a letter of September 25, 1912, to the plaintiff from the defendant it was said, "referring to correspondence and conversations with you in regard to the subject of Shay locomotive," etc. This reference does not attempt to incorporate any previous conversations into the contract between the parties, and even if it did it was entirely superseded by the subsequent agreement of the parties upon the specifications of the engine. The trial court properly struck out evidence of the oral agreement with relation to the alleged oral warranty.

Judgment affirmed.

Sloss, J., Richards, J., *pro tem.*, Melvin, J., Shaw, J., Lorigan, J., and Angellotti, C. J., concurred.

Rehearing denied.